# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN MAHAN | 1:24-cv-880 (MAD/CFH) |
| WILLIAM KITTS | |
| MICHAEL BEDELL | |
| JAYME BENOIT | |
| DANIEL BREDA | |
| CLAYTON BROWNELL | |
| SCOTT CARPENTER JR | |
| HAYDEN CHAPMAN | |
| CHRISTOPHER CLAYTON | |
| ANDREA DYCHA | |
| KEVIN FERRIS | |
| MASON FOUNTAIN | |
| PEDRO GARCIA | |
| CHRISTOPHER GREIVE | |
| MICHAEL GRIGAS | |
| JENAE HEFLIN | |
| KASSANDRA HEFLIN | |
| EDDIE HERNANDEZ | |
| NIKLAS KAPLAN | |
| CHRISTOPHER KYNE | |
| JAMES LABOUNTY | |
| SEAN LYONS | |
| JEFFREY MARGAN | |
| CHAD MARSHALL | |
| MICHAEL MARTIN | |
| WILLIAM MAYNARD II | |

JAKOB MCCASLAND

CONNOR MCCREA

ERIC MUELLER

JOHN MURPHY IV

MARK NELSON

ETHAN OSTAPCZUK

THOMAS PHELAN

GARY PITCHERALLE

ANTHONY PRAGA

RAMON RODRIGUEZ

ALEXANDER RONEY

KYLE ROSSI

TYLER RUHLE

CRIEN SALTON

MICHAEL SHARADIN

ROBERT SWATLING

ADAM TOWERS

JASON URDANG

NICOLE VOEGLER

KIMBERLY WHITACRE

MICHAEL WHITACRE

DANIEL YETTO

DAVID ZECCA

   Plaintiffs,

 v.

COUNTY OF SARATOGA,

 Defendant.

## COMPLAINT

Plaintiffs, by and through their counsel, the law firm of McGillivary Steele Elkin LLP, and the law firm of Isaacs Devasia Castro & Wein LLP, for their Complaint against the County of Saratoga, New York ("Defendant" or "County"), state as follows:

## INTRODUCTION

1. Plaintiffs are current and former employees of the Defendant, County of Saratoga, New York, who work or have worked as Deputy Sheriff/Patrolmen ("Patrolmen"), Deputy Sheriff/Sergeants ("Sergeants") or Deputy Sheriff/Investigators ("Investigators") in the Saratoga County Sheriff's Department. Plaintiffs bring this action for a declaratory judgment, back pay, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the Defendant's willful and unlawful violations of federal law complaint of herein.

2. Plaintiffs bring this action against Defendant as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation under the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same policies and/or practices that violate the FLSA whereby the Defendant suffered or permitted Plaintiffs to perform uncompensated overtime work before and/or after their paid shifts. Plaintiffs are also similarly situated to each other because they have been subject to the same polices and/or practices that violate the FLSA whereby the Defendant fails to properly calculate the regular rate of pay upon which Plaintiffs' overtime rate is based and fails to pay overtime compensation in a timely manner.

## PARTIES

3. Plaintiffs, who are listed in Exhibit A, have given their written consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

3

4. Each of the Plaintiffs in this action, while employed by Defendant, has been an "employee" within the meaning of FLSA, 29 U.S.C. § 203(e)(1).

5. Defendant County of Saratoga is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The County of Saratoga has a principal office and place of business located at 40 McMaster Street, Ballston Spa, New York 12020.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b)

7. Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts, events, or omissions given rise to the claim occurred in this District.

## FACTS

8. Plaintiffs are, and at all times material herein have been, employed by the County of Saratoga as Saratoga County Deputy Sheriffs' Police Benevolent Association ("PBA") bargaining unit employees in the positions of Deputy Sheriff/Patrolmen ("Patrolmen"), Deputy Sheriff/Sergeants ("Sergeant") or Deputy Sheriff/Investigators ("Investigators") within the Saratoga County Sheriff's Department.

9. Plaintiffs work for the Saratoga County Sheriff's Department in the Patrol Division, which provides 24/7 police protection throughout the County.

10. The County of Saratoga and PBA have entered into an agreement governing certain terms and conditions of employment which is set forth in a Collective Bargaining Agreement.

11. For example, at all times material herein, Plaintiff Ryan Mahan has worked for Defendant as a Sergeant. In this position, his principal job duties include, but are not limited to,

answering calls for service and assisting with Patrolmen's responses to calls for service, and creating zone assignments for the Patrolmen.

12. For further example, at all times material herein, Plaintiff Bill Kitts has worked for Defendant as a Patrolman. In this position, his principal job duties include, but are not limited to, answering calls for service, patrolling the County by enforcing federal, state, and local laws, and providing EMS assistance.

13. While working as Patrolmen, Sergeants, and Investigators, Plaintiffs are regularly scheduled to work at least 40 hours a week. Specifically, each week, they are regularly scheduled to work five shifts of eight hours.

14. Because of the nature of the Patrolmen and Sergeants work, their assigned posts must be manned for 24 hours a day. Thus, Plaintiffs who work in these positions cannot leave their posts without proper relief from the oncoming Patrolmen or Sergeant.

15. Defendant utilizes manual timecards in which certain Patrolmen, Sergeants, and Investigators punch in and out of a traditional time clock. If any employee needs to make any notation or indicate a change of their hours, such as when they switch a shift, use compensatory time, take leave, or identify certain shifts as overtime hours, they must do so by hand on their timecard prior to the end of the two-week pay period. Timecards are collected by the County once every two weeks, at which time the Plaintiffs are issued a blank timecard for use during the next pay period.

16. For certain other Patrolmen, Defendant utilizes timesheets in which Plaintiffs hand write the time they start and end their shift. These paper timesheets are collected by the County once every two weeks.

17. Other Departments within the County of Saratoga utilize the automated timekeeping system called Kronos. However, the Saratoga County Sheriff's Department fails to use Kronos even though the County has installed the Kronos electronic timeclocks in Department facilities and uses it for other employees' timekeeping and pay.

18. Plaintiffs are not permitted to clock in until seven minutes prior to the start of their scheduled shift time regardless of whether they begin working earlier. When Plaintiffs and all others similarly situated clock in seven minutes prior to the start of their scheduled shift, the Defendant's policy is to round the time for purposes of pay down to 0 minutes. Thus, if a Plaintiff's shift begins at 4:00 pm, and they clock in at 3:53 pm, their time will be recorded for purposes of pay as starting at 4:00 pm. However, Plaintiffs' timecards will reflect the exact minute they punch in which is always within seven minutes of the start of the Plaintiffs' shifts regardless of whether or not they begin working earlier as a result of the County's policy In other words, Defendant has devised a time-keeping system that always rounds Plaintiffs' pre-shift work time down to zero regardless of when Plaintiffs begin working each day.

### *Uncompensated Work Performed by Plaintiffs*

19. While working for the Saratoga County Sheriff's Department, Plaintiffs routinely work over 40 hours a week because they frequently work overtime in addition to their regularly scheduled hours performing their regular job duties. Plaintiffs are not fully compensated for these additional hours above 40 in a workweek.

20. As explained above, Plaintiffs are not allowed to clock in until seven minutes before the start of their scheduled shift because Defendant's timekeeping policy is to round any time that is seven minute or less to zero minutes for purposes of pay even if work is performed during those seven minutes. Further, Plaintiffs routinely perform work before and after the start of their

6

regularly scheduled shift, including time which is off-the-clock as a result of Defendant's timekeeping policies and practices since it occurs more than seven minutes before the official start of their shift or more than seven minutes after the end of their official shift end time.

21.     In weeks in which Plaintiffs are scheduled to work a minimum of 40 hours per week, this work causes Plaintiffs to work in excess of 40 hours in each week because it occurs in addition to the work performed during their regularly scheduled shift hours. As such, Plaintiffs regularly work these additional uncompensated hours in workweeks in which they work over 40 hours.

22.     While working as Patrolmen, Sergeants, and Investigators for the County of Saratoga, Plaintiffs routinely work over 40 hours a week. Such employees are scheduled to perform a minimum of 40 hours of work per workweek.

23.     Plaintiffs employed by Defendant routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40, because Plaintiffs are scheduled to work a minimum of 40 hours per week but Defendant fails to compensate them for daily pre-shift and post-shift work. For example, certain Plaintiffs are employed as K-9 handlers and assigned canines to work with in their jobs as Patrolmen. The Plaintiff K-9 handlers take their assigned canines home with them and perform certain activities such as caring for and feeding the canines at home for which they are not compensated. Defendant fails to compensate the K-9 handlers for time spent caring for and feeding their assigned canines. These activities take approximately an hour or more each day.

24.     For example, Plaintiff Ryan Mahan routinely works more than 40 hours in a workweek as a Sergeant. When Plaintiff Mahan works more than 40 hours, Defendant fails to compensate him for all of his work time. Specifically, Defendant has failed to compensate Plaintiff

Mahan for overtime work it suffered or permitted him to perform at all times he was assigned to work a schedule of 7:00 am to 3:00 pm. On these occasions, Plaintiff Mahan routinely arrives approximately 30 minutes prior to the start of his scheduled shift and begins performing work tasks such as changing into his mandated uniform, making zone assignments, checking emails, and performing a shift briefing. Plaintiff is not permitted to change into his uniform at home, or to wear his uniform outside of the workplace. Plaintiff Mahan is not permitted to clock in until seven minutes before his shift starts, or until 6:53 am. All of Plaintiff Mahan's work time prior to 7:00 am is unpaid pursuant to Defendant's policies and practices. Additionally, Plaintiff Mahan routinely clocks out approximately 15 minutes after 3:00 pm, as he is required to perform a shift exchange with the oncoming Sergeant, dock his body camera, and change out of his uniform; this post-shift time is also unpaid pursuant to Defendant's policies and practices. Thus, Plaintiff Mahan is not compensated for approximately three hours and 45 minutes of additional overtime beyond his scheduled shift per week.

25.     For example, Plaintiff Bill Kitts routinely works more than 40 hours in a workweek as a Patrolman. When Plaintiff Kitts works more than 40 hours, Defendant fails to compensate him for all of his work time. Specifically, Defendant has failed to compensate Plaintiff Kitts for overtime work it suffered or permitted him to perform at all times he was assigned to work as schedule of 8:00 am to 4:00 pm. Approximately 2-3 times per week, Plaintiff Kitts routinely arrives approximately 15-20 minutes prior to the start of his scheduled shift and begins performing work tasks such as changing into his mandated uniform, collecting case reports, and receiving pertinent information from the Sergeant. Plaintiff is not permitted to change into his uniform at home or to wear his uniform outside of the workplace. Plaintiff Kitts is not permitted to clock in, however, until seven minutes before his shift starts, or until 7:53 am. All of Plaintiff Kitts' work time prior

8

to 8:00 am is unpaid pursuant to Defendant's policies and practices. Additionally, Plaintiff Kitts clocks out approximately 10 minutes after 4:00 pm 1-2 approximately times per week, as he is required to dock his body camera, turn in his radio and any paperwork, brief the Sergeant with any pertinent information from his shift, and change out of his uniform before leaving the workplace; this time is also unpaid pursuant to Defendant's policies and practices because Defendant requires him to clock out seven minutes or fewer after the end of his shift so that his post-shift time is rounded down to 0 minutes and he is not paid for it. Thus, Plaintiff Kitts is not compensated for at least approximately 40 minutes and as much as one hour and 20 minutes of additional overtime work beyond his scheduled shift per week.

26. All Plaintiffs employed by Defendant are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40, because Defendant fails to compensate Plaintiffs for daily pre-shift and post-shift work.

### *The Rate at Which Overtime is Paid to Plaintiffs and All Others Similarly Situated*

27. During the last three years, Plaintiffs and all others similarly situated have received certain payments for their work, including but not limited to shift differentials, meal allowances, longevity pay, on-call pay and cash payments made to employees who opt out of the County's health insurance coverage. These payments are made pursuant to the Collective Bargaining Agreement or County or Department policy, and thus they are paid to Plaintiffs and all others similarly situated. However, on occasions when Plaintiffs work and are paid overtime compensation, Defendant fails to include these payments in the regular rate of pay which is used to calculated overtime payments owed to Plaintiffs.

28. Defendant fails to include the payments described herein in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, County-

wide practice. The failure to include these payments in Plaintiffs' regular rate means that when Plaintiffs received paid overtime for working in excess of 40 hours a week, they have been paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

29. For example, according to the Collective Bargaining Agreement, the City will provide health insurance to employees and pay a percentage of the total costs of the insurance for each employee. In exchange for this coverage, employees who opt-in to the health insurance coverage contribute the remaining percentage of the total employee costs per month out of their paycheck. The City then pays the insurer for the employees' health coverage.

30. Under the Collective Bargaining Agreement, Plaintiffs and all others similarly situated have the option to either opt in or, if they have other health care coverage through their spouses or parent's employer, or for other reasons, opt out of the health insurance coverage,

31. Employees who elect to opt out of health care coverage receive cash payments from the County. A member who is eligible but opts out of will receive $150 per month, placed in a Trust Account. The employee will receive the funds accumulated at the end of the year from the County. All of this money is recorded as taxable income to the employees.

32. In *Flores v. City of San Gabriel*, the Ninth Circuit Court of Appeals held that cash-in-lieu of benefits payments made to employees who opt-out of employer-provided health insurance cannot be excluded from the regular rate of pay under the Fair Labor Standards Act. 824 F.3d 890, 902 (9th Cir. 2016). Similarly, in *Badger v. City of Cortland*, 2024 WL 2804430 (N.D.N.Y. May 31, 2024), Judge Suddaby ruled that such payments made in lieu of health insurance must be included in the regular rate of pay.

33. Additionally, the U.S. Department of Labor announced that cash payments made to employees who decline to participate in an employer-sponsored benefits plan, like health

insurance, are not excludable from the regular rate of pay, consistent with the Ninth Circuit's holding in *Flores. See* Regular Rate Under the Fair Labor Standards Act, 84 Fed. Reg. 68736, 68761 (Dec. 16, 2019) (cash payments in lieu of benefits are not excluded from the regular rate as "such cash payments are made directly to the employee, and so fail to satisfy the requirement under FLSA section 7(e)(4) that contributions be made by an employer to a trustee or third person. Nor are cash-in-lieu of medical benefits generally excludable under the 'other similar payments' clause of section 7(e)(2)") (internal quotations omitted).

34. Plaintiffs and all others similarly situated have been exercising their option to receive the cash payment in lieu of participating in the County's health insurance. However, the County excludes any cash payments made for opting out of health insurance coverage when it calculates the Plaintiffs' regular rates of pay for purposes of paying the Plaintiffs' overtime compensation.

35. The cash payments made in lieu of health insurance benefits are not made to a trustee or third party, but rather, directly to the employees who choose to opt out. Therefore, these cash in lieu of benefits payments do not meet the requirements under the FLSA to be excluded from the regular rate of pay.

36. Furthermore, the applicable Collective Bargaining Agreement provides for longevity pay increases to be paid to Plaintiffs. However, when Defendant pays Plaintiffs overtime during periods in which they received longevity pay, Defendant fails to include the longevity payments in calculating Plaintiffs' regular rates of pay.

37. Defendant knew or should have known of its obligation to include these payments and benefits in Plaintiffs' regular rate of pay but nevertheless failed to do so. By failing to include these and other payments in the regular rate of pay, Defendant failed to pay Plaintiffs and all others

similarly situated for all hours worked over 40 in a workweek at the proper overtime rate of one-and one-half times their regular rate of pay.

38. Defendant fails to include the payments described above, as well as other payments paid to Plaintiffs in addition to their regular hourly rate of pay, in the calculation of the regular rate of pay of Plaintiffs and all others similarly situated pursuant to a systematic, County-wide practice. The failure to include these payments in Plaintiffs' regular rate means that when Plaintiffs receive paid overtime for working in excess of 40 hours a week, they are paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

39. Defendant acted voluntarily and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and all others similarly situated in accordance with the FLSA.

40. All Plaintiffs who receive such payments pursuant to the Collective Bargaining Agreement are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess for 40 because Defendant continues to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each Plaintiff can be identified through the Defendant's payroll and timekeeping records, and through other work and pay records.

### *Late Payment of Overtime Worked*

41. In those instances in which Defendant has compensated Plaintiffs and those similarly situated for working in excess of 40 hours a week, Defendant routinely pays Plaintiffs for their overtime work more than one pay period after the date that Plaintiffs have been paid for their non-overtime work hours that week (i.e., more than two pay periods after the overtime was worked) through no fault of the Plaintiffs. The delay in payment is because of managerial delays

or for other reasons that are unrelated to the County's ability to determine the amount of overtime compensation that is owed to the Plaintiffs.

42. All Plaintiffs are similarly situated and routinely work more than 40 hours in a workweek but are routinely compensated for overtime work in an untimely manner. The precise amount of untimely paid overtime received by Plaintiffs can be identified through the Defendant's timekeeping system and payroll records, and through other work and pay records.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(A) OF THE FLSA

43. Plaintiffs hereby incorporate paragraphs 1 through 42 in their entirety.

44. At all times material herein, during those workweeks in which Plaintiffs have worked hours in excess of 40 a week, they have performed work activities without compensation before the start of their shifts and after the end of their scheduled shifts. This pre-shift and post-shift work has caused Plaintiffs to work in excess for 40 hours in a given week, but Plaintiffs do not receive full pay for these additional hours. Accordingly, as a result of these pay practices, Defendant has failed to provide Plaintiffs with the rights and protections provided under section 7(a) of the FLSA, 29 § U.S.C. 207(a).

45. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of 40 hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have

been suffered or permitted to work before the official start time of their shifts and after the end of their scheduled shifts.

46. As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody, and control of the Defendant, and Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

47. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover backpay as well as liquidated damages in an amount equal to their backpay damages for Defendant's failure to pay overtime compensation as alleged herein.

48. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PROPERLY CALCUATE THE REGULAR RATE OF PAY FOR PLAINTIFFS IN VIOLATION OF SECTION 7 OF THE FLSA

49. Plaintiffs hereby incorporate paragraphs 1 through 48 in their entirety.

50. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq.*, require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions not applicable here. Defendant has failed to include certain payments, including but not limited to longevity pay, shift differentials, meal allowances, on-call pay, and cash payments made for opting out of health

insurance benefits, in Plaintiffs' regular rates of pay which is used to compute the overtime pay entitlements of Plaintiffs and all others similarly situated. This practice results in Defendant paying Plaintiffs for overtime work at a rate that is below the rate mandated by the FLSA.

51. As a result of Defendant's systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to Plaintiffs and all others similarly situated an amount that has not yet been determined. The employment and work records for the Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody, and control of Defendant and its public agencies, so Plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the Plaintiffs and all others similarly situated form which the amount of Defendant's liability can be ascertained.

52. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover backpay as well as liquidated damages in an amount equal to their backpay damages for the Defendant's failure to pay proper overtime compensation.

53. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## **COUNT III**

**FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR MONTHS AFTER THE OVERTIME WAS WORKED**

54. Plaintiffs hereby incorporate paragraphs 1 through 53 in their entirety.

55. The FLSA mandates that overtime compensation is paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owed, and in no event shall such payments

be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying Plaintiffs' overtime payments for working in excess of 40 hours a week.

56. As recently stated in *Accosta, et al. v. Lorelei Events Grp. Inc., et a.*, No. 7:17-cv-07804-NSR (S.D.N.Y. Jan. 21, 2022), "while 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that it is a violation of the FLSA to withhold employees overtime such that 'two weeks is an unreasonable amount of time for an employer to delay a paycheck.'" (quoting *Coley v. Vanguard Urban Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC), 2018 U.S. Dist. LEXIS 50787 (E.D.N.Y. Mar. 29, 2018)). Here, Defendant's failure to pay Plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

57. As a result of Defendant's willful and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and work records for Plaintiffs are in the exclusive possession, custody, and control of the Defendant, and Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to Plaintiffs from which the amount of Defendant's liability can be ascertained.

58. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their delayed overtime compensation for Defendant's failure to timely pay overtime compensation as alleged herein.

59. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs hereby pray that this Court:

(a) Order a complete and accurate accounting of all compensation to which the Plaintiffs and all others similarly situated are entitled;

(b) Award Plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation and/or delayed compensation;

(c) Award Plaintiffs and all others similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

DATE: July 16, 2024

Respectfully submitted,

/s/ Sarah M. Block
Sarah M. Block
Gregory K. McGillivary
Rachel Lerner
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
smb@mselaborlaw.com
gkm@mselaborlaw.com
rbl@mselaborlaw.com

Howard Wien
ISAACS DEVASIA CASTRO & WIEN LLP
80 Broad Street, 5th Floor
New York, NY 10004
Phone: (917) 551-1300
hwien@idcwlaw.com